ANGELO VINCI, Plaintiff, *v.* HARRY CHARNEY, Defendant.

Supreme Court, Trial Term, Oneida County, July 8, 1948.

*James Kernan* and *William Martin* for defendant.

*Joseph J. Ferlo* for plaintiff.

SEARL, J. Plaintiff has been awarded a verdict of $1,800. Defendant moves for a new trial.

Thomas and James Streets intersect in the city of Rome; Thomas Street extends easterly and westerly. In the center of the intersection there was on the 28th day of July, 1947, the day of the accident, a signal light alternating between red and green at thirty second intervals, with the exception

that amber appeared for three seconds on the green signal. Plaintiff was driving his car in a funeral procession moving easterly on Thomas Street. When substantially half of the procession, had passed the signal light, defendant's car approaching from the south, collided with plaintiff's car, which bore, as plaintiff claimed, a sticker, placed upon the windshield indicating that the car was being used in funeral service. Defendant maintained that he proceeded into the intersection when the green light appeared for north and south bound traffic, and that he had a right so to do.

The question that arose upon the instant trial was whether or not an ordinance duly passed by the Common Council of the City of Rome, to the effect that cars passing in a funeral procession had the right of way, regardless of signal lights being operated at the time was properly admissible, in view of the provisions contained in the statute. The court excluded the ordinance as it did not appear that there was any officer regulating or directing traffic at the intersection.

A very similar situation was presented in *Merkling* v. *Ford Motor Co.* (251 App. Div. 89, 92). In the *Merkling* case (*supra*) an ordinance of the city of Buffalo was received in evidence which provided that no conveyance except mail, fire, police, and similar vehicles " shall be driven through a procession, except with the permission or by order of a police officer."

The court there charged that if the operator of defendant's car drove through the procession, and there was any causal connection between such act and the accident, the jury might find defendant negligent on the ground that violation of an ordinance was some evidence of negligence. On appeal, defendant claimed that neither the ordinance nor subdivision 2 of section 82 of the Vehicle and Traffic Law, which was substantially to the same effect as the ordinance, was applicable in view of the provisions of section 84 of the Vehicle and Traffic Law. The present wording of section 84, on the day of the instant accident, was in substantially the same form as when the *Merkling* case (*supra*) was tried. It presently reads in part as follows: " Whenever traffic is lawfully regulated by a traffic control signal, the following colors may be used and none other and those colors when lighted shall be obeyed as required by this article and in accordance with their meaning as set forth in this article, except as provided in sections eighty-one and eighty-five."

" Red shall require that traffic shall stop and remain standing.
" Green shall mean that traffic shall move."

Subdivision 21 of section 81, which constitutes one of the exceptions, provides that: " 21. At all intersections when traffic is controlled by traffic control signals, movement shall be made on the green light only   *   *   *."

Section 85 is not applicable to the present situation.

In direct conflict with the provisions of section 84 are the provisions contained in subdivision 2 of section 82, which provides: " A vehicle or street surface car, except as provided in subdivision one of this section, shall not be driven through a procession, except by order of a peace officer. If the procession shall take more than five minutes to pass a given point, it shall be broken and the traffic permitted to go through." Subdivision 1 refers to vehicles of the United States mail, police, fire, fire patrol, bureau of buildings, emergency repair of public service corporations, ambulance, the military, etc., but no reference is made to funerals.

In the *Merkling* case (*supra*), the court refers to the fact that the City of Buffalo had no authority to adopt any ordinance which would nullify or change the statute. Reference is there made to the fact that subdivision 4 of section 90 of the Vehicle and Traffic Law gives to the local authorities of a city the power to make and enforce " such additional reasonable ordinances, rules and regulations with respect to traffic   *   *   * as special local conditions may require   *   *   *." However, subdivision 5 of the section prohibits such authorities from passing any act inconsistent with the statute itself.

As stated in the *Merkling* case there was a direct mandate contained in the statute to the effect that " Green shall mean that traffic *shall move.*" (Italics inserted.)

Therefore, applied to the instant case, the defendant was authorized to move when given the green signal, regardless of whether a funeral procession was passing or not, provided there was no traffic officer at that point to otherwise regulate traffic, and assuming defendant could move without unreasonably endangering another. As stated in the *Merkling* opinion (p. 95), defendant driver was justified in assuming, unless it would appear otherwise to a reasonably prudent person, that the ordinary vehicle " whether in a procession or not, would heed a signal which commanded it to stop."

It is interesting to note that in the opinion in *Foley* v. *State of New York* (177 Misc. 443), the court stated that the claimants

asserted that the expression contained in section 84 to the effect that " Green shall mean that traffic shall move " was more than an invitation, that it was a command.

The *Foley* opinion was written in 1941, four years after the opinion of Justice EDGCOMB in the *Merkling* case (*supra*), in which Justice EDGCOMB stated (p. 93): " It will be noted that the meaning to be given the two colors, green and red, on a traffic control signal, is clearly defined, and the mandate to go on green, and stop on red, is positive and definite." *Foley* v. *State of New York* was reversed (265 App. Div. 682). Although Justice McCURN, writing for the court, does not state whether the showing of green was a mandate positive and definite, as stated by Justice EDGCOMB in the *Merkling* case (*supra*), yet Justice McCURN does state: " The green light was at least an invitation for her to proceed." (P. 685.)

The lower court in the *Foley* case (*supra*) cited *Shea* v. *Judson* (283 N. Y. 393) and *Ferraro* v. *Garden City Park Fire Commissioners* (259 App. Div. 121) as authority for the assertion that the expression: " green shall mean that traffic shall move " amounted to an invitation only, not a command. Reference to these two cited cases indicate the well-recognized principle that an authority to proceed should be obeyed only if the driver could reasonably proceed without danger of collision. An examination of the court's language in the *Shea* and *Ferraro* cases fails to limit the application of the statute to a mere invitation rather than a command, subject, however, to the ever present rule of the exercise of reasonable care.

The statute must be read according to its clear import and wording as a command to proceed. It seems that such an interpretation is reasonable. If any procession requires the aid of municipal authorities in passing through its streets, the assistance of a traffic officer should be obtained, it seems, to regulate traffic, if the procession be granted the privilege of passing stop or red signals. The decision of the Fourth Department in the *Merkling* case (*supra*) is still the law in this State. The language of the court (p. 93) is clear, namely, " the mandate to go on green, and stop on red, is positive and definite." We may carry the argument a bit further, perchance a procession might be several miles in length, there might be a lapse of several blocks between various portions, or divisions, of the procession. It cannot be reasonably urged that all cross traffic be stopped, and accumulate, with the countless number of vehicles interfering with the traffic, unless a police officer so directs. It is

apparent that the presence of an officer could remedy the situation. The mere prohibition that traffic may not pass through a procession would unreasonably interfere with the rights of the users of the highway.

The *Merkling* case has been cited in 147 American Law Reports 524. The test at page 523 follows: Usually " ordinances are invalid if they are in conflict with statutes relating to the subject. Later cases also support this proposition.'' Again in 164 American Law Reports the *Merkling* case is cited at page 48.

In any event the defendant has no proper complaint in the instant case as the court ruled against the contention of the plaintiff and excluded the ordinance.

Several witnesses substantiated the contention of the plaintiff to the effect that the car in which plaintiff was driving entered the intersection on the green signal. Defendant maintained that he looked to the right and that the highway was entirely clear, that he looked to the left and saw a few cars coming, but that the nearest car was thirty-five or forty feet from the intersection. The jury resolved the issues in favor of the plaintiff. The court is unable to say that the verdict rendered is against the weight of the credible evidence. Defendant's motion for a new trial is, therefore, denied.